**William P. RUST, Plaintiff,**

v.

**DREXEL FIRESTONE INC., Defendant.**

**No. 72 Civ. 2824.**

United States District Court,
S. D. New York.

Dec. 19, 1972.

716

---

William P. Ford, New York City, for plaintiff.

Davis, Polk & Wardwell, New York City, for defendant; Philip C. Potter, Jr., Steven F. Goldstone, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action against defendant, an investment banker and a member of the New York Stock Exchange (hereafter the Exchange), for the recovery of commissions and other compensation allegedly due him for. the sale of corporate bonds while in the defendant's employ. The defendant now moves to stay the action until arbitration shall be had in accordance with the Constitution and Rules of the Exchange, or, in the alternative, for an order directing the plaintiff to proceed to arbitration in accordance with the aforesaid Constitution and Rules. Jurisdiction is based upon diversity of citizenship.

Rule 345 of the Exchange requires that before a person may be employed as a registered representative by a member firm an application for approval of employment must be completed and signed by the prospective employee and employer and filed with the Exchange. Plain-

tiff and defendant completed such an application on November 23, 1970, when he began to perform the services for which he now seeks compensation. Under paragraph 31(j) of the application plaintiff agreed:

". . . that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange."

Rule 345.17(j) of the Exchange provides that no member shall employ a registered representative unless the latter consents to the foregoing clause, and paragraph 30(d) of the application contains a commitment by the employee to abide by the Constitution and Rules of the Exchange.

There is no dispute that if the arbitration clause here at issue is valid it is enforceable under the United States Arbitration Act as a contract "evidencing a transaction involving commerce,"[1] or, since this is a diversity suit, under New York law.[2] The sole issue is raised by plaintiff's contention that everyone who desires to be employed as a registered representative, supervisor, or corporate officer of a member firm of the Exchange must sign and file the same application as a condition of employment. Plaintiff asserts he was given no choice as to whether or not to sign the application, nor any opportunity to negotiate or change any of its provisions—in his words, "no signature, no job." He contends that in signing the application he did not intend to surrender his right to bring his dispute with his employer into the courts, which forum would afford him a jury trial, full pretrial discovery

---

1. 9 U.S.C. §§ 2–4; see Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir. 1971); Signal-Stat Corp. v. Local 475, 235 F.2d 298, 301–303 (2d Cir. 1956), cert. denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957).

2. N.Y.CPLR § 7501 (McKinney 1963); Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 76 S.Ct. 273, 100 L. Ed. 199 (1956); Lummus Co. v. Commonwealth Oil Ref. Co., 195 F.Supp. 47, 51–53 (S.D.N.Y. 1961).

and other rights and remedies available to litigants.[3]

Plaintiff advances no facts to suggest actual duress in his execution of the employment agreement other than that the arbitration provision is required of all who seek employment by Exchange member firms. The narrow issue is whether its inclusion amounts to duress, thereby rendering the provision invalid as a contract of adhesion, a shorthand term for a "take it or leave it" contract entered into by parties in unequal bargaining positions.[4] If so, it is unenforceable under both federal and New York law.[5]

Duress, it has been said by our Court of Appeals in a case where it was sought to void an arbitration clause upon that ground, "is [a question] of degree. 'As a practical matter it is obvious that there is no line of absolute demarcation between fear that deprives a person of free will and judgment, and lesser degrees of fear . . . .' . . .

Moreover, the nature and extent of the pressure 'is inseparable from the subject. The pressure must be improper and excessive in going beyond what is reasonable under the circumstances in order to constitute either duress or undue influence.' "[6]

■■ In deciding the nature and extent of the pressure, if any, exerted upon plaintiff and whether, under all the attendant circumstances, duress resulted, the relationship of the parties and the substance of the contract may be considered. The contract was one of employment, the essence of which centered about compensation, commission and other prerequisites. There is no suggestion that these were not bargained for at arms length between plaintiff and defendant. This aspect of their negotiations was not on a "take it or leave it basis." The defendant was neither a monopolist nor a public utility. Plaintiff, if dissatisfied with the compensation offered or other conditions pertaining to his work, was free to seek employment with another investment banker. Although it is true that he would still be required to accept the arbitration clause, such a provision was relatively of minor significance as against the terms of compensation and commission. It is also significant to note that rather than being viewed as oppressive, arbitration clauses are favored by both state and federal law as an economical form of dispute resolution which relieves the congestion of overburdened courts.[7] Moreover, the arbitration provision was not imposed unilaterally by the defendant upon the plaintiff; it was imposed upon both by the Constitution and Rules of the Exchange; the defendant, no less than the plaintiff, gave up its right to a judicial forum.

■ Finally, the rule requiring employer and employee to submit their differences to arbitration comes within the self-regulatory power vested in the Exchange. Pursuant to the Securities Exchange Act of 1934,[8] stock exchanges received authority under the supervision of the Securities and Exchange Commission to regulate their own affairs. Stock exchanges are required to register

3. Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

4. See Standard Oil Co. of Cal. v. Perkins, 347 F.2d 379, 383 n. 5 (9th Cir. 1965); Siegelman v. Cunard White Star, 221 F.2d 189, 204 (2d Cir. 1955) (Frank, J., dissenting).

5. Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753, 756 (2d Cir. 1967).

6. Id. at 757.

7. See Wilko v. Swan, 346 U.S. 427, 431–432, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); Matter of Grayson-Robinson Stores, 8 N.Y.2d 133, 138, 202 N.Y.S.2d 303, 307, 168 N.E.2d 377, 379 (1960).

8. 15 U.S.C. § 78a et seq.

718

with the SEC,[9] and registration may not be granted unless the Exchange submits copies of its constitution and rules [10] and they are found to be "just and adequate to insure fair dealing and to protect investors. . . ."[11] As the Supreme Court observed in *Silver* v. *New York Stock Exchange*,[12] the 1934 Act created a "federally mandated duty of self-policing by exchanges,"[13] and "[o]ne aspect of the statutorily imposed duty of self-regulation is the obligation to formulate rules governing the conduct of exchange members."[14] The Exchange, in its self-regulatory role has a legitimate interest in deciding how disputes between its members and their employees are to be resolved; it has a legitimate interest in fostering harmonious relations among the varied groups whose daily activities play a role in the complex operations of the Exchange. Considering that interest, it is not unreasonable to require those engaged in such operations to resolve their disputes, which ofttimes may center about practices peculiar to the Exchange, through prompt and economic arbitration rather than by drawn out litigation before judges of fact who may be without experience in the trade practices and customs.[15]

■ *Silver* held that particular instances of exchange self-regulation which fall within the scope and purposes of the Securities Exchange Act are valid defenses to antitrust claims.[16] There is

even more reason that the self-regulatory function of the Exchange should be honored in resisting a claim grounded upon the nebulous common law concept of duress than in the instance of an antitrust claim based upon federal statutory law whose enforcement is in the public interest. Indeed, the First Circuit recently suggested, in considering an antitrust objection by a registered representative to the enforceability of the arbitration clause required by Rule 345 of the Exchange, that such a requirement may come within the self-regulatory grant of the 1934 Act.[17] The district court had so held.[18] If the policies behind the Securities Exchange Act immunize the arbitration provision as a condition of employment from antitrust attack, then the same policies foreclose a challenge based upon the theory of duress which, unlike antitrust, is not part of the federal statutory law.

■ Under all the circumstances, it cannot be said that the arbitration requirement as a condition of employment constitutes duress or that the employer has taken unjust economic advantage of the employee.

■ Plaintiff makes a final argument that the law of New York in actions brought to recover wages [19] in which the employee prevails is to allow reasonable attorneys' fees and, upon a finding of willful failure to pay the required wage, to award an additional 25% of the wages due as damages.[20]

9. 15 U.S.C. § 78e.

10. 15 U.S.C. § 78f(a)(3).

11. 15 U.S.C. § 78f(d).

12. 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

13. *Id.* at 352, 83 S.Ct. at 1254.

14. *Id.* at 353, 83 S.Ct. at 1254.

15. *Cf.* Wilko v. Swan, 346 U.S. 427, 431–432, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

16. However, such an exemption was found not warranted upon the facts in that case.

17. Dickstein v. duPont, 443 F.2d 783, 787–788 (1st Cir. 1971).

18. 320 F.Supp. 150, 153–154 (D. Mass. 1970).

19. " 'Wages' means the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. . . . " N.Y. Labor Law § 190 (McKinney Supp. 1972 Consol. Laws c. 31).

20. N.Y. Labor Law § 198 (McKinney Supp. 1972).

Based thereon, he urges that to allow arbitration of such claims is contrary to New York's public policy, since if he should prevail in an arbitration proceeding, the arbitrators lack power to allow attorneys' fees or an additional award in the event they further find the defendant's failure to pay was willful. Apart from the fact that it is not altogether clear that plaintiff, whose contract called for a base annual salary of $30,000, plus commissions, comes within the intendment of the wage statute, the contention is without substance. The policy of the state clearly favors arbitration agreements.[21] The very fact that the state by specific statute judicially enforces such agreements readily answers plaintiff's argument.[22]

The action is stayed and the plaintiff is directed to proceed to arbitration in accordance with the terms of the agreement entered into with the defendant.

---

21. *Cf.* Matter of Grayson-Robinson Stores, 8 N.Y.2d 133, 138, 202 N.Y.S.2d 303, 307, 168 N.E.2d 377, 379 (1960).

22. N.Y.CPLR § 7501 (McKinney 1963).