**Susan A. DESIDERIO, Plaintiff–Appellant,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., Defendant–Appellee.**

**Docket No. 98–6100.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 7, 1998.

Decided: Sept. 22, 1999.

Everett E. Lewis, New York, New York (Shirley Fingerhood, Nicholas F. Lewis, Hope Pordy, Lewis, Greenwald, Clifton & Nikolaidis, P.C., New York, New York, of counsel), for Appellant.

.Terri L. Reicher, Assistant General Counsel, Washington, D.C. (John J. Flood, Associate General Counsel, National Association of Securities Dealers, Inc., Washington, D.C., of counsel), for Appellee.

Before: KEARSE, CARDAMONE, and STRAUB, Circuit Judges

CARDAMONE, Circuit Judge.

Plaintiff, Susan A. Desiderio, received an offer of employment from Florida's Suntrust Bank (Suntrust or bank) to become a securities broker. Her employment was conditioned on registration with defendant National Association of Securities Dealers, Inc. (NASD). To register with the NASD, Desiderio was asked to sign Form U–4 that contained a provision making all employment related disputes subject to arbitration. Desiderio said she would sign the form only if the mandatory arbitration provision was stricken from it. When the NASD refused to accept an altered form, the bank's offer of employment to plaintiff was revoked.

In her complaint, Desiderio asserts that the mandatory arbitration provision in Form U–4 violates her statutory rights under Title VII, 42 U.S.C. §§ 2000e to e–17, her constitutional rights under the Fifth Amendment Due Process Clause to an Article III judicial forum, and her right to a jury trial under the Seventh Amendment. She seeks a declaratory judgment invalidating the mandatory arbitration provision in Form U–4, and also asks for compensatory damages through her pendent state law tort claims.

## BACKGROUND

Defendant NASD is a self-regulatory private corporation registered with the Securities and Exchange Commission (SEC) as a national securities association. As an integral part of a comprehensive system of · federal regulation of the securities industry, the NASD regulates the over-the-counter securities market, which includes securities firms and registered representatives who buy and sell over-the-counter-securities. Its authority is exercised under the close supervision of the SEC, which must approve all the NASD's rules and regulations. Among the rules that have been expressly approved by the SEC is the Form U–4 registration form. That form—the subject of this litigation—incorporates a provision for compulsory arbitration of all disputes between a securities representative and her employer, when required by the rules of the self-regulatory organization with which the securities representative seeks to become registered. Under NASD rules, all employees are compelled to arbitrate any employment-related dispute. In order to work in the securities industry, the SEC requires a securities broker to be registered with at least one self-regulatory organization, *see* 17 C.F.R. § 240.15b7–1 (1998), and registration in such organization entails signing Form U–4.

The NASD operates an arbitration forum for the purpose of resolving disputes between securities brokers and their employers. Its Code of Arbitration Procedure regulates the composition of the arbitration panel, provides for the disclosure of information by arbitrators concerning potential conflicts of interest, and also provides for the subsequent removal of an arbitrator by means of a challenge. Under the procedure an arbitration award must be in writing.

On March 18, 1996 Desiderio, as noted, was hired as a registered representative by Suntrust, conditioned upon her signing a Form U–4 as required by both state and federal law. She signed the Form U–

4, · but struck out the mandatory arbitration provision. Suntrust had no objection to Desiderio's modification of the form. But NASD did. An employee of NASD, in a telephone conversation, allegedly advised Suntrust that an altered Form U–4 was unacceptable for registration. Plaintiff refused to execute an unaltered one. Because Desiderio could not become registered, Suntrust revoked its offer of employment. The altered Form U–4 was never submitted to the NASD.

Plaintiff subsequently filed a complaint instituting the present action on January 15, 1997, naming both the NASD and the SEC as defendants. In a judgment entered on April 23, 1998, the United States District Court for the Southern District of New York (Leisure, J.) granted defendants' motions to dismiss plaintiff's complaint for failure to state a claim pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff appeals from that judgment. Her appeal against the SEC was stipulated to be withdrawn, leaving the NASD as the only appellee. We affirm.

## DISCUSSION

### Mootness & Ripeness

■ We dispose first of the threshold question of whether this case is moot. On June 22, 1998 while this case was pending, the SEC approved a proposed rule change offered by the NASD that abolishes mandatory NASD arbitration of statutory employment discrimination claims. *See* Self Regulatory Organizations; National Association of Securities Dealers, Inc.; Order Granting Approval to Proposed Rule Change Relating to the Arbitration of Employment Discrimination Claims, 63 Fed. Reg. 35299, 35303 (1998) (Order Granting Approval). The rule change became effective on January 1, 1999. *See id.* As a result, the NASD argues that many of Desiderio's claims have become moot.

As a general rule, in a case involving an allegation that defendant has engaged in illegal activity, a court's power to hear and decide the matter is not terminated when defendant voluntarily ceases its illegal conduct. That is, such cessation does not necessarily make a case moot. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); *New York State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 91–92 (2d Cir.1998), *cert. denied sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic,* —— U.S. ——, ——, ——, 119 S.Ct. 2336, 144 L.Ed.2d 234, 67 U.S.L.W. 3570, 3754, 3756 (1999). A case may nevertheless be moot if the defendant can demonstrate that: "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis,* 440 U.S. at 631, 99 S.Ct. 1379. The burden of demonstrating mootness "is a heavy one." *Id.; W.T. Grant Co.,* 345 U.S. at 633, 73 S.Ct. 894; *Terry,* 159 F.3d at 91.

The NASD amended its rules voluntarily. *See* Order Granting Approval, 63 Fed. Reg. 35299, 35300. In light of proof that the rule change was partially prompted by political concerns such as letters from members of Congress, *see id.* at 35300, the NASD has not met its burden of showing that there is no reasonable expectation that this rule will ever be reinstated, *see Davis,* 440 U.S. at 631, 99 S.Ct. 1379. Securities firms who are members of the NASD may have an interest in lobbying to reimpose the mandatory arbitration rule with respect to statutory discrimination claims, and there is no evidence that such lobbying would be ineffective. In addition, interim relief and events have not completely and irrevocably eradicated the effects of the alleged violation on plaintiff, *see id.* As approved by the SEC, the rule change only applies to claims filed on or after January 1, 1999. *See* Order Granting Approval, 63 Fed.Reg. at 35301. As a result, plaintiffs with currently pending statutory discrimination claims that were filed before January 1, 1999 are still compelled to arbitrate. Thus, this case presents a situation where the "public interest in having the legality of the practices settled, militates against a mootness conclusion." *W.T. Grant Co.,* 345 U.S. at 632, 73 S.Ct. 894.

The NASD further urges that Desiderio's claims are not ripe because she never actually submitted her Form U–4 to the NASD. However, "[w]e will not require . . . a futile gesture as a prerequisite for adjudication in federal court." *Williams v. Lambert,* 46 F.3d 1275, 1280 (2d Cir. 1995) (claim was ripe because attempt to modify agreement would be futile); *cf. International Bhd. of Teamsters v. United States,* 431 U.S. 324, 365–66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (person who never applied for job is entitled to retroactive seniority if applying would have been futile because of discriminatory hiring practices). It would have been futile for Desiderio to submit an altered Form U–4 after being told that the NASD advised Suntrust that emendation of Form U–4 would not be accepted for registration purposes.

## Standard of Review

We review dismissal of a cause of action under the Federal Rules of Civil Procedure 12(b)(6) *de novo. See Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Under *de novo* review, we accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. We will not affirm the dismissal of a complaint unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Id.*

I Statutory Rights Under Title VII

### A. *Views of Other Circuits*

 Whether a pre-dispute agreement requiring compulsory arbitration, such as Form U–4, is enforceable with regard to Title VII claims is an issue that has divided the circuits and is one of first impression in this Court. Practically every circuit that has addressed the question has held that the arbitration clause in Form U–4 validly applies to Title VII claims. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 7 (1st Cir.1999); *Seus v. John Nuveen & Co.,* 146 F.3d 175, 182 (3d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 882 (4th Cir.), *cert. denied,* 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996); *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir.1991); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 307 (6th Cir.1991); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 365 (7th Cir.), *petition for cert. filed,* 67 U.S.L.W. 3707 (U.S. May 5, 1999) (No. 98–1778); *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 837 (8th Cir.1997); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1487 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992); *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482–83 (D.C.Cir.1997).

In a notable exception to this unanimity, the Ninth Circuit has ruled that the Form U–4 compulsory arbitration clause is unenforceable with regard to Title VII claims. *See Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1190 (9th Cir.), *cert. denied,* —— U.S. ——, ——, 119 S.Ct. 445, 465, 142 L.Ed.2d 399 (1998). Further, the EEOC has issued a policy statement that supports the conclusion found in *Duffield. See* EEOC, Notice No. 915.002, Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment (1997), *available in* LEXIS, 2NDARY Library, EEOMAN FILE.

The circuit conflict stems from varying interpretations of *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the Supreme Court held that employees could be required under Form U–4 and New York Stock Exchange Rule 347 to arbitrate age discrimination claims brought under the Age Discrimination in Employment Act (ADEA). *Id.* at 23, 111 S.Ct. 1647. Most circuits have found the analytical framework used in *Gilmer* with respect to the ADEA applies to Title VII as well. Thus, we proceed to examine *Gilmer's* application to Title VII claims.

### B. *Applicability of Gilmer and the FAA*

The Civil Rights Act of 1991(Act) added a provision on arbitration to Title VII stating that "[w]here appropriate and to the extent authorized by law, the use of … arbitration[ ] is encouraged" to resolve Title VII claims. Pub.L. No. 102–166, § 118, 105 Stat. 1071, 1081 (§ 118), *reprinted in* 42 U.S.C. § 1981 app. at 509 (1994). We agree with the view of the majority of circuits that the phrase "to the extent authorized by law" is on its face a clear and unambiguous reference to "current law." *See, e.g., Seus,* 146 F.3d at 183. Hence, as current law, both *Gilmer* and the Federal Arbitration Act (FAA) apply to our analysis of § 118.

In contrast, the Ninth Circuit in *Duffield* suggested that the phrase "to the extent authorized by law" refers not to current law as stated in *Gilmer* and the FAA, but instead refers to a previously relevant case, *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), that was severely narrowed by *Gilmer. See Duffield,* 144 F.3d at 1194–95. This argument relies on passages from the legislative history, which reflect the fact that at the time that § 118 was being drafted, *Gardner–Denver* was widely interpreted as prohibiting any form of compulsory arbitration of Title VII

claims. *See id.; Prudential Ins. Co. v. Lai,* 42 F.3d 1299, 1303 (9th Cir.1994) (collecting cases). *Gilmer* later limited *Gardner–Denver* to its facts, concerning collective bargaining, a subject not implicated by Desiderio's appeal. *See Gilmer,* 500 U.S. at 35, 111 S.Ct. 1647.

■ Because we find the text clear on its face, we do not reach these arguments based on legislative history. Where the text of a statute is unambiguous, we need not look at the legislative history. *See Ex Parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949). As a consequence, we do not find *Duffield*'s analysis persuasive with respect to the applicability of *Gardner–Denver.*

### C. *What Gilmer and the FAA Require*

*Gilmer* states the general principle that arbitration agreements are enforceable with regard to statutory claims, "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue [as indicated] in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." 500 U.S. at 26, 111 S.Ct. 1647. *Gilmer* found nothing in the text, legislative history, statutory framework or purposes of the ADEA demonstrated a congressional aim to preclude arbitration, and hence concluded that mandatory arbitration clauses were enforceable under the FAA with respect to claims under the ADEA. 500 U.S. at 26–27, 111 S.Ct. 1647; *see also Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (applying the same searching test to RICO and the Securities Exchange Act of 1934); *Bird v. Shearson Lehman/Am. Express, Inc.,* 926 F.2d 116, 118 (2d Cir.1991) (same with respect to claims under ERISA).

■ Although many circuits have attempted to simplify the *Gilmer* inquiry by assuming that Title VII and ADEA share parallel objectives because they are similar civil rights statutes, *see Cole,* 105 F.3d at 1468; *Alford,* 939 F.2d at 230; *Metz,* 39 F.3d at 1487; *Patterson,* 113 F.3d at 837; *Bender,* 971 F.2d at 700, reliance on such an assumption does not accord with the detailed analysis of statutory text, history, and purposes required by *Gilmer* on a statute-by-statute basis. Thus, we undertake this same statute-by-statute analysis with regard to Title VII. We begin by noting that the burden is on Desiderio to show that Congress intended to preclude a waiver of a judicial forum for her statutory claims, *see Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647, keeping in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). We pass to an in-depth look at Title VII.

## II Title VII's Text, Legislative History, & Purposes

### A. *Text*

■ The first step in interpreting a statute is to determine whether the language at issue has a "plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843. If the text is unambiguous, the inquiry is at an end and we need proceed no further. *See id.* at 340, 117 S.Ct. 843.

The relevant text in Title VII states that "[w]here appropriate and to the extent authorized by law, the use of ... arbitration[ ] is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this Title." Civil Rights Act of 1991, § 118. We conclude— as did the Third, Fourth, and Seventh Circuits—that the text of § 118 evinces a plain Congressional purpose of encourag-

ing arbitration of Title VII claims and not one of precluding such arbitration. *See Koveleskie,* 167 F.3d at 365; *Seus,* 146 F.3d at 182; *Austin,* 78 F.3d at 881–83. It follows that barring the application of mandatory arbitration agreements to Title VII claims would conflict with the express statutory term "encouraged" in § 118.

The Ninth Circuit in *Duffield* suggested, to the contrary, that the text of § 118 is ambiguous when viewed in light of the general purpose of the Civil Rights Act of 1991, namely, to provide "additional remedies" against intentional discrimination, such as more expansive fee-shifting provisions and added rights to a jury trial and to compensatory and punitive damages. 144 F.3d at 1193 (citing § 2 of the Act). *Duffield* then concluded that the goal of expanding remedies was at odds with compulsory arbitration, which would effectively limit a plaintiff's options. 144 F.3d at 1192–93.

We are unable to adopt the view expressed in *Duffield.* Compulsory arbitration does not defeat the right to compensatory and punitive damages, or fee shifting because an arbitrator is also empowered to grant this kind of relief. Moreover, it is untenable to contend that compulsory arbitration conflicts with the Act's provision for the right to a jury trial, because *Gilmer* ruled that compulsory arbitration clauses could be enforced in claims under the ADEA, a statute that explicitly provides for jury trials. *See Rosenberg,* 170 F.3d at 11. Nor are we convinced that the underlying purposes of Title VII and the 1991 Civil Rights Act inherently conflict with the imposition of compulsory arbitration. We conclude therefore that the word "encouraged" is free of ambiguity when viewed in the context of the purpose of the statute.

### B. *Legislative History Not Considered*

As Desiderio correctly notes, however, there is express language in the legislative history that suggests a congressional purpose to preclude mandatory arbitration of Title VII claims. For instance, two House Committee reports stated with respect to § 118 that "the Committee believes that any agreement to submit disputed issues to arbitration ... in an employment contract, *does not preclude the affected person from seeking relief under the enforcement provisions of Title VII.*" H.R.Rep. No. 102–40(I), at 97 (1991) (House Committee on Education and Labor) (emphasis added), *reprinted in* 1991 U.S.C.C.A.N. 549, 635; H.R.Rep. No. 102–40(II) at 41 (House Judiciary Committee) (same), *reprinted in* 1991 U.S.C.C.A.N. 694, 735. One report further explained that § 118 "encourag[ed] the use of alternative means of dispute resolution to supplement, rather than supplant, the rights and remedies provided by Title VII," and that a Republican version of § 118 was rejected specifically because it "encourag[ed] the use of [arbitration] in place of judicial resolution ... [and thus] employers could refuse to hire workers unless they signed a binding statement waiving all rights to file Title VII complaints." H.R.Rep. No. 102–40(I) at 104, *reprinted in* 1991 U.S.C.C.A.N. at 642.

While the language cited from the Committee reports suggests the preservation of the right to a judicial remedy under Title VII, such language is not found in the text of the statute. Rather, the Act says that the use of arbitration is to be "encouraged." We recognize that Congress' aim to foster arbitration, by itself, does not thereby require us to preserve an agreement waiving rights to a judicial forum. But, we assume, as does the Supreme Court, that the drafters of Title VII and the amendments introduced in the Act were well aware of what language was required for Congress to evince an intent to preclude a waiver of judicial remedies. In construing Title VII, the absence of that language is a meaningful omission. Moreover, the substantive rights found in the statute are not in any way diminished by our holding that arbitration may be compelled in this case, since only the forum—an arbitral rather than a judicial

one—is affected, and plaintiff's rights may be as fully vindicated in the former as in the latter. As a result, and primarily because we find the language of the statute to be clear, we need not consider the inconsistent legislative history. *See Ex Parte Collett,* 337 U.S. at 61, 69 S.Ct. 944.

Because the text of Title VII does not square with its legislative history, appellant's argument comes down to nothing more than the poet's lament: The saddest words of tongue and pen are "it might have been, More sad are these we daily see; It is, but it hadn't ought to be." F. Brete Harte, *Mrs. Judge Jenkins, in Political Works,* 265, 267 (1872). In sum, we hold that Desiderio has not met her burden of showing that with respect to claims under Title VII, Congress intended to preclude the waiver of judicial remedies. Accordingly, the arbitration provision in Form U–4 may be applied to Desiderio's Title VII claims.

### III Constitutional Claims

Plaintiff insists that the mandatory arbitration clause in Form U–4 unconstitutionally requires her to forfeit her Fifth Amendment right to due process, her Seventh Amendment right to a jury trial, and her right to an Article III judicial forum to assert her right to employment as a broker-dealer in the securities industry. We agree with the district court that these constitutional arguments all fail because the requisite state action is absent.

#### A. *NASD is a Private Entity*

■■■■■ A threshold requirement of plaintiff's constitutional claims is a demonstration that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action. *See United States v. International Bhd. of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991). The NASD is a private actor, not a state actor. It is a private corporation that receives no federal or state funding. Its creation was not mandated by statute, nor does the government appoint its members or serve on any

NASD board or committee. Moreover, the fact that a business entity is subject to "extensive and detailed" state regulation does not convert that organization's actions into those of the state. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (extensively regulated public utilities are not state actors). Indeed, we have already ruled that the New York Stock Exchange—a self-regulatory private organization like the NASD—is not a state actor. *See United States v. Solomon,* 509 F.2d 863, 867–71 (2d Cir.1975); *see also First Jersey Secs., Inc. v. Bergen,* 605 F.2d 690, 699 n. 5 (3d Cir.1979) (NASD is not a state agency).

#### B. *Nexus Required for State Action by Private Entities*

■■■■ At the same time we recognize that private entities may be held to constitutional standards if their actions are "fairly attributable" to the state. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Several criteria for satisfying this standard have been established

> First, ... [t]he complaining party must ... show that there is a sufficiently *close nexus* between the State and the challenged action.... [C]onstitutional standards are invoked *only when it can be said that the State is responsible for the specific conduct* of which the plaintiff complains....
>
> Second, ... a State normally can be held responsible for a private decision *only when it has exercised coercive power or has provided such significant encouragement,* either overt or covert, that the choice must in law be deemed to be that of the State. *Mere approval ... is not sufficient* to justify holding the State responsible for those initiatives....

*Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (emphases added).

Notably, *Blum* requires a nexus between the state and the *specific* conduct of which plaintiff complains. Here the nub of Desiderio's complaint is her challenge to the arbitration clause contained in the Form U–4. But no SEC rule or action that has been called to our attention encourages the NASD to compel arbitration. *See Merrill Lynch, Pierce, Fenner & Smith v. Ware,* 414 U.S. 117, 135–36, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973) ("[T]here is nothing in the [Securities Exchange Act of 1934] and there is no Commission rule or regulation that specifies arbitration as the favored means of resolving employer-employee disputes."); 17 C.F.R. § 240.15b7–1 (nothing in the 1993 SEC regulation text mentioning arbitration). Moreover, the arbitration clause in Form U–4 was drafted by the NASD in cooperation with other self-regulatory organizations, with no encouragement from the SEC. *See Adoption of Form U–4,* Exchange Act Rel. No. 11424, 7 S.E.C. Dkt. 2, 1975 WL 19312, at *2 (May 16, 1975).

Concededly, after Form U–4 was drafted, it was subject to approval by the SEC, from which fact plaintiff infers that state action is present. Simply because the SEC approved the arbitration clause in Form U–4 is not enough. As *Blum* emphasizes, a state is responsible for a private decision only where it exercised coercive power or provided significant encouragement. 457 U.S. at 1004–05, 102 S.Ct. 2777. The SEC's "[m]ere approval" of Form U–4 is "not sufficient" to justify holding the state liable for the effects of the arbitration clause. *Id.* at 1004, 102 S.Ct. 2777.

Consequently, we find no state action in the application or enforcement of the arbitration clause of Form U–4. This conclusion is consistent with our holding in *Albert v. Carovano,* 851 F.2d 561 (2d Cir. 1988) *(en banc ).* In *Albert,* state law required a private college to formulate a disciplinary code and have it approved by the state. *Id.* at 564, 567. We held that the college's disciplining of a student was not state action because the state law did not specifically dictate or draft the content of the disciplinary rules. *See id.* at 567, 571.

## IV Contract of Adhesion

Again, appellant insists that Form U–4 is unenforceable, because it is an unconscionable contract of adhesion. A contract or clause is unconscionable when there is an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." 8 Samuel Williston, *A Treatise on the Law of Contracts,* § 18:9, at 54 (Richard A. Lord ed., 4th ed.1998); *see Seus,* 146 F.3d at 184 (same); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 249 (2d Cir.1991) (purpose of unconscionability doctrine is to prevent unfair surprise and undue oppression); *see also Rust v. Drexel Firestone Inc.,* 352 F.Supp. 715, 717 (S.D.N.Y.1972) (discussing element of duress).

Form U–4 binds *both* parties to mandatory arbitration and may not be said to favor the stronger party unreasonably. Hence, it is not a contract of adhesion. As the Supreme Court emphasized in *Gilmer,* "[m]ere inequality in bargaining power" between employers and employees is not alone sufficient to hold arbitration agreements unenforceable. 500 U.S. at 33, 111 S.Ct. 1647; *cf. Seus,* 146 F.3d at 184 (Form U–4 arbitration clause not a contract of adhesion); *Drayer v. Krasner,* 572 F.2d 348, 353–56 (2d Cir.1978) (upholding industry-wide NYSE mandatory arbitration clause as reasonable).

## V Private Right of Action for Pendant State Claims

Finally, Desiderio brings state law tort claims against the NASD for its alleged "arbitrary and capricious administration in having an unpublished method" for avoiding mandatory arbitration. Specifically, plaintiff warrants that an unnamed employee of NASD chose to remain "per-

versely ... silent" about the fact that the NASD rules do not actually prohibit an agreement between the employer and employee, which provides at the request of the employee that employment disputes will be litigated in court. Nonetheless, we have previously held there is no private right of action available under the Securities Exchange Act to redress denials of membership in an exchange, or to challenge an exchange's failure to follow its own rules. *See Feins v. American Stock Exch., Inc.,* 81 F.3d 1215, 1216 (2d Cir. 1996); *Brawer v. Options Clearing Corp.,* 807 F.2d 297, 298–99 (2d Cir.1986).

Plaintiff acknowledges that generally no private right of action exists, but maintains that the rule has a bad faith exception. Whether plaintiff properly raised this bad faith argument to the district court is subject to some doubt, but in any event we exercise our discretion to entertain it. *See Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994) (appellate court has some discretion to address arguments not raised in district court).

In *Brawer,* we held that "a private cause of action against an exchange or a clearinghouse for failure to comply with one of its rules which requires an exercise of discretion, *if one exists at all,* may be brought only if it is premised upon allegations of fraud or bad faith." 807 F.2d at 299 (emphasis added). But it is problematic whether the bad faith exception suggested in *Brawer* binds us with regard to the specific circumstances presented in the present case. We later clarified in *Feins* that no private right of action existed for "erroneous membership decisions of securities exchanges, whether made intentionally, negligently or otherwise." 81 F.3d at 1222. Because *Feins* is analogous to the present case, in that it addressed a denial of membership, it controls. No bad faith exception is therefore available to Desiderio in the present circumstances. In sum, plaintiff has no private right of action and her state law claims were accordingly properly dismissed.

## CONCLUSION

For the reasons stated, we affirm the judgment appealed from without costs to either party.