# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 15, 2008      Decided November 7, 2008

No. 07-7162

IN RE: SERIES 7 BROKER QUALIFICATION EXAM SCORING
LITIGATION,

WILLIAM LOWE, ET AL.,
APPELLANTS

v.

THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
AND EDS CORPORATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 06mc00355)

*Gerald E. Martin* argued the cause for appellants. With him
on the briefs was *Herbert E. Milstein*. *Jonathan W. Cuneo* and
*Steven A. Skalet* entered appearances.

*Douglas R. Cox* argued the cause for appellees The National
Association of Securities Dealers, Inc., et al. With him on the
brief was *F. Joseph Warin*.

*Michael A. Carvin* argued the cause for appellee EDS

Corporation.  With him on the brief were *James E. Gauch* and *Juliet J. Karastelev*.

Before: BROWN, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  The question before us is whether common law causes of action can be alleged against a Self-Regulatory Organization ("SRO") for the negligent performance of its duties under the Securities Exchange Act of 1934 ("Exchange Act").  15 U.S.C. § 78o-3(b).  Despite a seemingly impenetrable wall of contrary precedent, plaintiffs argue that while suits challenging an SRO's discretionary decisions are clearly prohibited, SROs may be sued for the negligent performance of ministerial functions.  The district court did not buy it.  Neither do we.  We affirm the district court's grant of the defendants' motion to dismiss.

## I.  Background

The National Association of Securities Dealers ("NASD") (now known as the Financial Industry Regulatory Authority, Inc.), an SRO, administers the Series 7 examination, a computerized multiple-choice test, as part of the comprehensive regulation of the securities industry.  Electronic Data Systems ("EDS") is a private corporation, hired by NASD for technical services related to administration of the Series 7 exam.

For each exam, NASD randomly draws 250 questions of varying difficulty from a larger pool; each applicant receives only a 250-question subset of the larger pool on her particular examination.  After an applicant takes the Series 7 exam, a software program developed by EDS scores the exam, adjusting

for level of difficulty, and reports the results immediately to the applicant.

Sometime before October 1, 2004, an EDS maintenance technician inadvertently switched two of the three difficulty variables for approximately 213 questions. On October 1, 2004, those 213 questions were added into NASD's pool of questions. From that point forward, tests for many applicants included at least some of the 213 affected questions. Although the answer choices for the affected questions were not disturbed, the mistaken alteration of the difficulty ratings caused some test scores to be misreported. Between October 1, 2004 and December 20, 2005, when NASD discovered the mistake, 60,500 applicants had taken the test.

On January 6, 2006, NASD issued a press release, publicly acknowledging the results for 1,882 applicants had been mis-reported as failing scores. All affected applicants had their results corrected and their applications approved.

Some of the applicants who received incorrect Series 7 scores filed suit and these actions became part of a nationwide consolidated class complaint asserting causes of action for common law breach of contract, negligence, and negligent misrepresentation. The district court dismissed the complaint, noting plaintiffs are "seeking remedies for negligent performance of an SRO's regulatory duties that Congress did not see fit to provide." *In re Series 7 Broker Qualification Exam Scoring Litig.,* 510 F. Supp. 2d 35, 49, 50 (D.D.C. 2007).

## II. Discussion

Under the Exchange Act, any person conducting securities-related business must be associated with a registered securities association such as NASD. 15 U.S.C. §§ 78o(a)(1), (b)(8). The

Act requires all such persons to meet "standards of training, experience, competence, and such other qualification as the [SEC] finds necessary or appropriate in the public interest or for the protection of investors." *Id.* § 78o(b)(7). The SEC has, in turn, delegated to NASD the responsibility of devising a broker qualification exam to measure the competency of applicants. *See* 17 C.F.R. § 240.15b7-1. The delegation involves close oversight; the SEC approves all rule changes by an SRO such as NASD, no matter how minor. 15 U.S.C. § 78s(b). If the SEC deems it necessary, it may also amend an SRO's rules itself. *Id.* § 78s(c). The Exchange Act requires SROs to comply with the Act, the SEC's rules, and their own rules. *Id.* § 78s(g). Failure to do so can result in severe sanctions, such as revocation of SRO registration. *Id.* § 78s(h).

NASD has the right to bar membership to any applicant who does not meet the standards of competence prescribed by NASD's rules, including a passing score on the Series 7 exam. *Id.* § 78o-3(g)(3)(B). Any individual barred from membership by the NASD has statutorily guaranteed rights to appeal. *See id.* §§ 78s(d), (f), 78y(a)(1). Congress has created a complex system of review, involving several stages of appeal, for precisely the type of harm plaintiffs allege here. *Id.* §§ 78s(d), 78y(a)(1) (allowing review of improper denials of membership). Appeals can be brought before the SEC and, if desired, in the federal courts of appeals. *Id.* §§ 78s(d), 78y(a)(1). Additionally, NASD rules (promulgated under the authority delegated to it by the SEC, as envisioned by the Exchange Act) provide for two internal layers of appeal. *See* NASD Manual, Rules 9524, 9525, *available at* http://finra.complinet.com/finra (last visited Oct. 21, 2008). In total, applicants who believe their registration has been improperly denied have four potential levels of appeal: two with NASD, one before the SEC, and one in the federal courts of appeals.

Plaintiffs, who have had the benefit of every available administrative remedy, concede there is no federal implied private right of action; nevertheless, they insist their state law claims based on negligence and breach of contract are permissible. Defendants argue that such causes of action are impliedly preempted by federal law and, alternatively, that they are immune from suit based on regulatory immunity. Whether analyzed under preemption doctrine or a theory of regulatory immunity, the result is the same: plaintiffs cannot raise a common law complaint against defendants based on duties arising under the Exchange Act.

It is well established that "the question whether a certain state action is pre-empted by federal law is one of congressional intent." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985). When deciding the availability of such claims, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963). To assess the availability of a state common law cause of action, we therefore direct our attention to the intent of Congress. As the Supreme Court has stated, "[s]tate action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).

Several other circuits have analyzed whether common law claims can be raised based on an SRO's duties under the Exchange Act. Although the cases do not explicitly rely on preemption, the reasoning of our sister circuits is instructive regarding the preemptive intent of the congressional scheme. In *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49 (2d Cir. 1996), the Second Circuit held the New York Stock Exchange was immune from claims arising out of disciplinary proceedings required

under the Exchange Act. *Id.* at 59. "[A]llowing suits against the Exchange arising out of the Exchange's disciplinary functions would clearly stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, namely, to encourage forceful self-regulation of the securities industry." *Id.*

Later, in *Desiderio v. NASD*, 191 F.3d 198 (2d Cir. 1999), an applicant rejected for refusing to sign an arbitration clause had her common law tort claim dismissed because "there is no private right of action available under the Securities Exchange Act to redress denials of membership." *Id.* at 208. In *Desiderio*, like in *Barbara*, the Second Circuit found common law causes of action inconsistent with Congress's intent under the Exchange Act.

Similarly, the Ninth Circuit found a common law breach of contract claim could not be raised against NASD because doing so "would allow states to define by common law the regulatory duties of a self-regulatory organization." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998). The court in *Sparta* felt such a result "cannot co-exist with the Congressional scheme of delegated regulatory authority under the Exchange Act." *Id. See also MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004) ("[A]llowing MM&S to assert a private breach of contract claim [against NASD] would vitiate Congress's intent not to allow private rights of action against self-regulatory organizations for violating NASD's own rules."). Though not always explicitly identifying the underlying premise, courts have consistently found Congress's intent under the Exchange Act precludes common law causes of action, and we agree with the reasoning of our sister circuits.

The common law claims in this case—whether presented in tort or contract—seek monetary damages based on NASD's

wrongful determination of competency standards for specific applicants. Plaintiffs attempt to distinguish their case from the long line of precedent by arguing the previous cases involved violations of the Exchange Act which were artificially described as common law claims—that is, common law claims in name only, but in substance actions under the Exchange Act. Although plaintiffs insist their claims are "genuine" common law claims, this contention is beside the point, because it is those claims which Congress intended to preempt in the Exchange Act, and which would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Barbara*, 99 F.3d at 59.

As the Supreme Court has noted in another context, the structure of a statute may imply that Congress intended to preclude challenges arising under a statute when those challenges are outside the system of review prescribed by the statute. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). We are confident that any actions against SEC regulators, or those acting in their stead, are limited to the four levels of review specified by the Exchange Act. The multiple layers of review evince Congress's intent to direct challenges based on denials of membership to the avenues Congress created. Had Congress been silent on this issue, a more plausible case for common law suits might be made. But its clear designation of an appellate process shows a contrary intent: rather than allowing plaintiffs to sue under common law theories, Congress created a self-contained process to review and remedy such complaints.

Plaintiffs may be troubled by the fact that Congress's approach does not include damage-remedies for wrongfully rejected applicants. But plaintiffs' disenchantment changes nothing. By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims

for relief based on state common law. A common law suit for recovery of monetary damages is merely an "attempt . . . to bypass the Exchange Act" and the process Congress envisioned therein. *MM&S Fin.*, 364 F.3d at 912.

Turning to an immunity analysis, the Exchange Act reveals a deliberate and careful design for regulation of the securities industry. This regulatory model depends on the SEC's delegation of certain governmental functions to private SROs, such as NASD's administration and scoring of the Series 7 exam. Absent the unique self-regulatory framework of the securities industry, these responsibilities would be handled by the SEC—"an agency which is accorded sovereign immunity from all suits for money damages." *DL Capital Group, LLC v. Nasdaq Stock Mkt.*, 409 F.3d 93, 97 (2d Cir. 2005). When an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC. *See Weissman v. NASD*, 500 F.3d 1293, 1298–99 (11th Cir. 2007).

The comprehensive structure set up by Congress is suggestive both of an intent to create immunity for such duties and of an intent to preempt state common law causes of action. The elaboration of duties, allowance of delegation and oversight by the SEC, and multi-layered system of review show Congress's desire to protect SROs from liability for common law suits. "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Feins v. Am. Stock Exch., Inc.*, 81 F.3d 1215, 1221 (2d Cir. 1996) (quoting *Nw. Airlines v. Transp. Workers Union of Am.*, 451 U.S. 77, 97 (1981)).

The claims here challenge errors in developing the Series 7 exam, scoring the exam, and reporting scores correctly. All of these duties exist only because of NASD's Exchange Act responsibilities. *See* 15 U.S.C. § 78o(b)(7). NASD has no free-standing obligation to design, score, or report results—its obligations to do so arise only because of regulations under the Exchange Act. *See* 17 C.F.R. § 240.15b7-1. Were it not for the regulations that flow from the Exchange Act, NASD would not be administering the Series 7 examination. Courts have consistently barred suits which seek monetary relief for actions taken by agency regulators — or those acting in their place — in performance of their regulatory, adjudicatory, or prosecutorial duties. *See, e.g.*, *MM&S Fin.*, 364 F.3d at 912; *Desiderio*, 191 F.3d at 208; *Niss v. NASD*, 989 F. Supp. 1302, 1307–08 (S.D. Cal. 1997). Congress did not intend the regulatory duties at issue here to be enforced by common law causes of action.

Where courts accord immunity to SROs, the protection has been absolute. Courts have declined to craft exceptions for bad faith (*Desiderio*, 191 F.3d at 208), fraud (*DL Capital Group,* 409 F.3d at 98), negligence, or even gross negligence (*Sparta*, 159 F.3d at 1215). Unable to breach this formidable barrier of precedent or sneak past it in disguise, plaintiffs attempt to vault over it. Even if there is no exception for negligence generally, plaintiffs insist no immunity should exist for the negligent performance of purely ministerial functions. Plaintiffs borrow this distinction from tort cases in which courts sought to balance the scope of common law immunity with the doctrine's central purpose of insulating decision-making from the harassment of prospective litigation. In such cases, the invocation of absolute immunity would deprive a litigant of *any* remedy. *See Westfall v. Erwin*, 484 U.S. 292, 295 (1988). But this feint fails when Congress itself has resolved the question. The functional approach to immunity is appropriate only when the question has not been decided by express statutory enactment. *Forrester v.*

*White*, 484 U.S. 219, 223–25 (1988).  Here, plaintiffs, who have taken full advantage of the existing remedial scheme, try to defeat the SRO's immunity to get a different and more generous remedy than Congress saw fit to provide.

Congress designed a specific remedial structure for wrongful denials of membership and did not provide monetary relief.  Having considered the issue, Congress decided consequential damages should not be given for improper denials of membership under the Exchange Act.

Regardless of the approach taken, the conclusion is not changed: plaintiffs cannot bring a common law cause of action based on errors in design, scoring, or reporting of results of the Series 7 exam.  These duties arise only under the Exchange Act, and they are not open to suit under state common law theories. Both preemption and regulatory immunity support our holding, and the intent of Congress is clear under each approach. Because we find such claims are not allowable under the Exchange Act, we affirm the district court's judgment of dismissal.

*So ordered.*