Ripple, Circuit Judge.
Effex Capital, LLC ("Effex"), brought this action alleging that the National Futures Association (the "NFA") had defamed it in documents related to a settlement between the NFA and one of its members, Forex Capital Markets, LLC ("FXCM").[1] It sought injunctive relief and *885 damages. The district court dismissed the action, holding that Effex had failed to exhaust its administrative remedies.[2] Effex timely appealed the district court's dismissal.[3]
For the reasons set forth more fully in the following opinion, we now affirm the judgment of the district court.[4] In the Commodity Exchange Act, 7 U.S.C. § 1 et seq ., Congress has regulated comprehensively all matters relating to NFA discipline. As such, a federal Bivens remedy is unavailable.[5] Further, the Commodity Exchange Act preempts Effex's state law claims. Any remedy available to Effex must be based on the provisions of that statute.
I
BACKGROUND
A.
We begin our consideration of this matter with a summary discussion of the relevant provisions of the Commodity Exchange Act. In its current form,[6] the *886 Commodity Exchange Act seeks to curb price manipulation, ensure the financial integrity of commodities transactions, avoid systemic risk, protect market participants from fraud or abusive sales practices, and promote responsible and fair competition within the commodities market. 7 U.S.C. § 5(b). The Commodity Exchange Act serves these public interests "through a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the Commission."[7] Id. As part of this regulatory scheme, the Commodity Futures Trading Commission Act of 1974 authorized the creation of registered futures associations as self-regulatory organizations ("SRO") to complement the Commodity Futures Trading Commission's (the "Commission" or the "CFTC") regulation of commodity futures markets and their participants.[8]
The Commodity Exchange Act requires that SROs set forth many types of regulations and rules, including rules that "provide that its members and persons associated with its members shall be appropriately disciplined ... for any violation of its rules." 7 U.S.C. § 21(b)(8). Moreover, disciplinary proceedings against members and persons permitted to register as "associate[s]"[9] of a member must follow "fair and orderly procedure[s]." Id. § 21(b)(9). This mandate includes requiring "that specific charges be brought; that such member or person shall be notified of, and be given an opportunity to defend against, such charges; that a record shall be kept; and that the *887 determination shall include" statements setting forth the impermissible acts the member or person took, the rules violated, and penalty imposed. Id. ; see also 17 C.F.R. § 170.6(b) (requiring the SRO to "[c]onduct proceedings in a manner consistent with the fundamental elements of due process").
The statute provides for CFTC review of an SRO's disciplinary action. It requires that SROs "promptly shall give notice" of any final disciplinary action against a member or person associated with a member "to such member or person and file notice thereof with the Commission." 7 U.S.C. § 21(h)(1). Final disciplinary actions are "subject to review by the Commission on its motion, or on application by any person aggrieved by the action." Id. § 21(h)(2).[10] The accompanying regulations permit appeal to the Commission by "[a]ny party aggrieved by the final decision of the National Futures Association in a disciplinary ... action." 17 C.F.R. § 171.23(a). The regulations define a party as "any person who has been the subject of a disciplinary action ... by the National Futures Association; the National Futures Association itself; [and] any person granted permission to participate as a party pursuant to § 171.27 of these rules." 17 C.F.R. § 171.2(i). Section 171.27 provides that, "[u]pon motion of any interested person or, on its own motion, the Commission may permit, or solicit, limited participation in the proceeding by such interested person." 17 C.F.R. § 171.27(a). Interested persons include "parties and any other persons who might be adversely affected or aggrieved by the outcome of a proceeding; ... and any other person having a direct or indirect pecuniary or other interest in the outcome of a proceeding." Id. § 171.27(b). Intervention by such an interested person is appropriate "[i]f the Commission determines that participation would serve the public interest." Id. § 171.27(a). Beyond these specific regulations regarding application for Commission review of an SRO's disciplinary action, there is a general regulation that permits the Commission to "waive any rule" in § 171 "in a particular case" and "order proceedings in accordance with its direction" if waiver would "prevent undue hardship on any party or for any other good cause shown." 17 C.F.R. § 171.14. An order under this provision "shall be based upon a determination that no party will be prejudiced thereby and that the ends of justice will be served," and "[r]easonable notice" shall be "given to all parties of any action taken." Id.
The CFTC has the power to "set aside the sanction imposed by the [SRO] and, if appropriate, remand the case to the [SRO] for further proceedings." 7 U.S.C. § 21(i)(1)(B) ; see also 17 C.F.R. § 171.33(a) ("Upon review, the Commission may affirm, modify, set aside, or remand for further proceedings, in whole or in part, the decision of the National Futures Association."). The Commission's decision may be appealed to the appropriate United States Court of Appeals. 7 U.S.C. § 21(i)(4) ("Any person aggrieved by a final order of the Commission ... may file a petition for *888 review with a United States court of appeals....").
B.
The NFA is an SRO that is registered under the Commodity Exchange Act.[11] It is subject to the broad authority of the CFTC. See 7 U.S.C. § 21. This authority includes review of NFA disciplinary actions or denials of membership. Id. § 21(h).
Effex is a closely held, foreign-currency trading firm managed and controlled by John Dittami. It operates as an institutional over-the-counter, foreign-exchange liquidity provider and engages solely in transactions with other eligible contract participants such as financial institutions or highly capitalized trading counterparts. Because of the nature of Effex's trading, it is not subject to regulation by the NFA and is therefore not a member of the NFA.[12]
In accordance with its responsibilities under the Commodity Exchange Act, the NFA initiated an investigation into an association member, FXCM, and found that the company had engaged in several practices that violate the NFA's rules. FXCM chose to settle with the NFA, and on February 6, 2017, the NFA released several documents related to the settlement (collectively, the "FXCM Settlement Documents").[13] These documents include: (1) a complaint setting forth the NFA's allegations against FXCM; (2) a decision by the NFA Business Conduct Committee finding that FXCM committed the violations outlined in the complaint and detailing the terms of a settlement between the NFA and FXCM; (3) a publicly accessible narrative summarizing the decision; and (4) a press release announcing the decision and directing the public to the narrative posted on the NFA's website.
The NFA's complaint against FXCM alleged that FXCM failed to comply with a litany of NFA rules. More pertinently, the NFA claimed that Effex was involved in the misconduct allegedly committed by FXCM. The resulting decision outlined the allegations in the complaint, including those involving Effex, and accepted them as true. The accompanying narrative summarized the decision, including its statements about Effex. The press release, although it did not specifically reference Effex, noted that FXCM committed numerous deceptive and abusive actions and directed the public to the narrative on the NFA's website. Effex alleges that the NFA's findings in the FXCM Settlement Documents are false and that their publication is defamatory.
Although its investigation into FXCM implicated Effex, the NFA did not contact Effex or provide Effex with notice of the investigation. The CFTC, on the other hand, conducted its own investigation into FXCM. As part of its investigation, the Commission subpoenaed documents from Effex and took the deposition of Mr. Dittami and other Effex employees. Effex alleges that the NFA obtained documents necessary for its investigation from the CFTC despite Effex's request that its responses as a third party be kept confidential.
On the same day that the NFA announced its settlement with FXCM, the *889 CFTC issued its own decision about FXCM and its business practices.[14] It determined that FXCM had concealed an improper trading relationship with a "high-frequency trader" and a company the trader formed (which the Commission termed "HFT Co").[15] Although not explicitly named, the HFT Co is Effex. The CFTC found materially the same facts as the NFA did regarding Effex.
Effex did not seek review of either the NFA's decision or the Commission's decision regarding FXCM. Rather, four months after the decisions were released, Effex filed this action against the NFA in the district court.
C.
On July 31, 2017, Effex brought this action against the NFA. In its federal claims, Effex alleges that the NFA violated its due process rights by not providing it with notice of the investigation or an opportunity for a hearing before the publication of the FXCM Settlement Documents. The federal claims further submit that the NFA denied Effex due process of law when it did not allow Effex access to a post-deprivation remedy. In its state-law claims, Effex alleges that the statements about it in the FXCM Settlement Documents, published by the NFA, were defamatory. Additionally, Effex alleged business tort claims and a claim under the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065 et seq .
Effex sought injunctive relief, asking for an order requiring the NFA to remove the FXCM Settlement Documents from its website, to delete all references to Effex, or, alternatively, to provide Effex with a "name clearing hearing."[16] It further requested an order compelling the NFA to "issue a new press release stating: (a) NFA did not make any findings against Effex or Dittami; (b) Effex was not a de facto dealing desk of FXCM; (c) Effex was not controlled by FXCM; and (d) FXCM was not ordered to make any customer restitution."[17] Effex also asked for money damages of $10,000,000 for lost profits and to redress its constitutional injury.
The NFA moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[18] With respect to the federal claims, it submitted that dismissal was proper because there is no federal Bivens remedy and Effex had not exhausted its administrative claims under the Commodity Exchange Act. As for the state-law claims, the NFA contended that all were preempted by the Commodity Exchange Act. Finally, it claimed absolute immunity from any damages because the claims were based on its disciplinary proceedings.
The district court held that Effex failed to exhaust its remedies under the Commodity Exchange Act and dismissed without prejudice. The district court determined that the Commodity Exchange Act provides a statutorily mandated exhaustion requirement and that Effex had four avenues to pursue relief under the scheme. First, it found that Effex could have petitioned the CFTC to exercise its authority under 7 U.S.C. § 21(h)(2) to review the FXCM Settlement sua sponte because the statute permits the Commission to review an NFA decision "on its motion."
*890 Id. § 21(h)(2). Second, relying on the CFTC's decision in Paribas Futures, Inc. v. New York Mercantile Exchange , CFTC No. 90-E-3, 1990 WL 282868, at *2 (Mar. 22, 1990),[19] the district court decided that if Commission review under § 21(h)(2) is only available to aggrieved parties, Effex could have intervened to become a party under the relevant regulations. Third, citing In re Petition of Lake Shore Alternative Financial Asset Ltd. , CFTC No. CRAA-07-03, 2007 WL 2751884, at *2 (Sept. 17, 2007),[20] the district court noted that the CFTC had previously suggested that a nonparty could ask the Commission to waive its rules so that the nonparty could obtain CFTC review, but Effex had not made such a request. Finally, the district court determined that Effex could have turned to the Administrative Procedure Act and petitioned the CFTC to revise its rules generally to permit Commission review in such instances.
The district court rejected Effex's argument that any resort to the Commodity Exchange Act's remedies would have been impossible or futile. It noted that the CFTC had the ability to adjudicate due process claims. Moreover, the court acknowledged that even though the Commission rarely reviews NFA settlements, it previously had reviewed settlements. Finally, observing that Effex's claims "touch on the contents of the NFA Publications-documents generated as a result of the NFA investigation relating to a disciplinary action,"[21] the district court rejected Effex's contention that it was not seeking review of an NFA disciplinary action but rather merely was seeking a court order regarding the publication of the FXCM Settlement Documents containing the alleged defamatory statements.
Therefore, the district court dismissed Effex's Complaint. It did so without prejudice to any rights Effex might have to pursue its remedies before the CFTC and then to seek further review of those exhausted claims in the appropriate court of appeals. Having dismissed the complaint for failure to state a claim, the court also denied Effex's motion for a preliminary injunction as moot. Effex timely appealed.
II
DISCUSSION
A.
We now turn to the merits of this appeal.[22] First, we address whether Effex has a federal cause of action. The comprehensive nature of the federal regulatory scheme, as set forth above, grounded in the language and structure of the statute, makes clear that, in fashioning the disciplinary provisions of the Commodity Exchange Act, Congress certainly did not countenance a separate federal remedy, *891 much less a separate federal remedy fashioned by the judiciary. Indeed, Effex does not maintain that there is a specific federal cause of action to redress harm inflicted by an SRO upon one of its members. Rather, it asks that we imply a cause of action to remedy harm to a nonmember (such as Effex) resulting from an SRO proceeding. It casts this cause of action as one to remedy a due process violation under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics , 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bivens recognized a damages remedy to compensate persons injured by the federal officers who violated the Fourth Amendment even though the Amendment does not provide for money damages "in so many words." Id. at 395-97, 91 S.Ct. 1999. In doing so, the Court noted that Congress had not explicitly foreclosed a damages remedy and that there were no "special factors" counseling against authorizing such a remedy to effectuate the statute's purpose. Id.
In the years following Bivens , the Supreme Court has limited the application of the decision. See, e.g. , Ziglar v. Abbasi , --- U.S. ----, 137 S. Ct. 1843, 1857, 198 L.Ed.2d 290 (2017) (noting that the Court has consistently refused to extend Bivens to any new context or new category of defendants).[23] The Court has made very clear that the expansion of the Bivens remedy to other constitutional provisions is a "disfavored judicial activity." Id. at 1857 (internal quotation marks omitted). Ziglar explained that "[w]hen a party seeks to assert an implied cause of action under the Constitution itself," "separation-of-powers principles are or should be central to the analysis." Id. Under these principles, it is a "significant step" "for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Id. at 1856. Such a determination is a significant step because there are powerful countervailing considerations to the creation of a Bivens cause of action, including that Congress "has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." Id. Therefore, an implied cause of action under the Constitution is not available if there is a "special factor" that "cause[s] a court to hesitate" before determining that a court rather than Congress should provide a remedy. Id. at 1858. Such doubt could arise where "there is an alternative remedial structure present." Id. An alternative *892 structure "alone may limit the power of the Judiciary to infer a new Bivens cause of action" because Congress's decision to create the alternative remedial process is "convincing reason for the Judicial Branch to refrain from providing a new and free-standing remedy in damages." Id. (quoting Wilkie v. Robbins , 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) ).
Applying these principles, an alternative remedial structure counseling hesitation against expanding the Bivens remedy is certainly present here. The enactment of the Commodity Exchange Act provides far more than a "doubt" about Congress's willingness to tolerate an alternate remedy to the comprehensive remedial structure of federal oversight by SROs found in the statute. In the Commodity Exchange Act, Congress has set forth, with significant precision, the remedies available to members of an SRO and to others. Indeed, in another Bivens case, the Court has explained that, where Congress has exercised comprehensively its power to regulate, there is no room, or justification, for additional regulation through court-created causes of action. See Schweiker v. Chilicky , 487 U.S. 412, 424-29, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (determining that there was no Bivens action for alleged due process violations arising from the improper termination of social security benefits because Title II of the Social Security Act provided an "elaborate" system protecting the rights of benefit claimants).
An entity that was not a party to the SRO proceeding is no doubt in a somewhat different position than a party to the proceeding. We do not believe, however, that the difference is so significant that such an entity can maintain a judicially created cause of action against the SRO for harms that the nonparty claims to have suffered as a result of disciplinary proceedings. Such a view presupposes a very narrow, and in our view too narrow, understanding of the scope of the Commodity Exchange Act. Effex offers no explanation or support for why Congress, having established a comprehensive mechanism for the governance of the commodities industry, would permit disruption of that mechanism through a judicially created cause of action.[24]
Indeed, as the CFTC points out in its brief as amicus curiae, Congress has decided that a "person aggrieved" by the SRO's action may seek redress before the Commission. See 7 U.S.C. § 21(h)(2). To determine who falls within the scope of the provision, the CFTC submits that, like other statutorily created causes of action, there must be an inquiry into the zone-of-interests sought to be protected by the Commodity Exchange Act. See Lexmark Int'l, Inc. v. Static Control Components, Inc. , 572 U.S. 118, 134 S. Ct. 1377, 1388, 188 L.Ed.2d 392 (2014). This inquiry utilizes "traditional tools of statutory interpretation," id. at 1387, and "the breadth of the zone-of-interests varies according to the provisions of the law at issue," id. at 1389 (internal quotation marks omitted). The statutory analysis involves "discern[ing] the interests 'arguably ... to be protected' by the statutory provision at issue" and then asking "whether the plaintiff's *893 interests affected by the agency action in question are among them." Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co. , 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Camp , 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ). Undoubtedly, a "person aggrieved" by an SRO's action always includes a party to the proceedings. And there may be circumstances where a nonparty may fall within the zone-of-interests of the statute and therefore have the right to seek redress before the CFTC. Whether a particular entity falls within the zone-of-interests protected by the statute is a determination left to the Commission through case-by-case administration of the statute.
B.
We next address Effex's state-law claims. The comprehensive way by which the Commodity Exchange Act deals with disciplinary proceedings before an SRO also raises the question as to whether Congress intended the scheme to be free from other remedial devices based on state law. We conclude that Congress did intend to preempt state-tort claims such as the ones brought in this action.
The general principles governing the preemption of state law can be stated succinctly. Preemption is most obvious, of course, when the federal statute expressly commands it and defines the scope of such a preemptive effect. See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n , 461 U.S. 190, 203, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) ; Frank Bros., Inc. v. Wisconsin Dep't of Transp. , 409 F.3d 880, 885 (7th Cir. 2005). Preemption also occurs, however, where Congress manifests an intent to occupy exclusively an entire field of regulation through a comprehensive federal regulatory scheme. See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta , 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ; Wigod v. Wells Fargo Bank, N.A. , 673 F.3d 547, 576 (7th Cir. 2012). Additionally, a state law is preempted where it is impossible to comply with both federal and state law, see Fla. Lime & Avocado Growers, Inc. v. Paul , 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) ; Kroog v. Mait , 712 F.2d 1148, 1152-54 (7th Cir. 1983), or where state law would be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz , 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).[25]
We addressed preemption in the context of the Commodity Exchange Act in American Agriculture Movement, Inc v. Board of Trade of City of Chicago , 977 F.2d 1147 (7th Cir. 1992).[26] In that case, we examined claims that a contract market,[27] the Chicago Board of Trade, breached *894 its common law fiduciary duties and acted negligently. Id. at 1150-52. We approached the preemption issue cautiously. We first noted that the Commodity Exchange Act does not expressly preempt state law nor is it impossible to comply with both state and federal law. Id. at 1154. Moreover, we determined that the Commodity Exchange Act did not manifest an intent to occupy completely the entire field of commodity futures regulation. Id. at 1155. Specifically, we pointed to the Commodity Exchange Act's savings clause, which provides that "[n]othing in this section shall supersede or limit the jurisdiction conferred on the courts of the United States or any State ," id. (quoting 7 U.S.C. § 2 ), and viewed "any State" as "[p]reserving in the futures trading context at least some state law causes of actions," id. Turning to the last avenue for preemption-that applying state law would frustrate the purposes of Congress in enacting the Commodity Exchange Act-we decided that such conflict preemption could apply in certain circumstances. Id. at 1155-56.
In reaching this conclusion, we noted that, in addition to the savings clause, the Commodity Exchange Act provides that "the Commission shall have exclusive jurisdiction ... with respect to accounts, agreements ..., and transactions involving the contracts of sale of a commodity for future delivery, traded or executed on a contract market." Id. at 1155 (quoting 7 U.S.C. § 2 ). In order to give "full effect" to both the savings clause and the jurisdictional clause, we determined that "Congress intended to preempt some, but not all, state laws that bear upon the various aspects of commodity futures trading." Id. Precisely, preemption is appropriate "[w]hen application of state law would directly affect trading on or the operation of a futures market." Id. at 1156.
Applying this determination, we decided that common law claims against brokers for breach of fiduciary duty could go forward. We noted that the Commodity Exchange Act's structure evinced a comprehensive regulatory scheme and that the legislative history of the Commodity Futures Trading Commission Act of 1974 suggested that a catalyst for the significant amendments to the Commodity Exchange Act was a fear that, without increased federal regulation, the states would regulate the futures markets to a chaotic effect. Id. We also recognized other court decisions holding that common law claims such as negligence, fraud, and breach of fiduciary duty could be brought by futures investors against their brokers. Id. With this background in mind, we explained that the claims against brokers had "little or no bearing upon the actual operation of the commodity futures markets" and that "[o]nly in the context of market regulation does the need arise for uniform legal rules." Id. By contrast, "there is no need for uniformity when it comes to rules that govern principal-agent relationships between brokers and investors." Id.
Here, Effex does not seem to challenge that preemption applies to claims by NFA members contesting its disciplinary actions. The NFA's discipline of its own members is a specific and central element of the role Congress delegated to SROs in its regulation of the commodities futures market. See 7 U.S.C. § 21(b) ; see also H.R. Rep. 93-975, at 58 ("Association activity would serve solely as a complement rather than a displacement to the authority of the new Commission."). If a member could challenge the NFA's discipline and disciplinary process through a state-tort claim, the NFA's capacity to discipline its members-here, FXCM-for violating its rules would be impaired significantly. State *895 courts effectively could supervise the NFA's regulation of its members and thus impede its federally mandated role in the Commodity Exchange Act's overall scheme. The resulting obstacle to Congress's purposes in creating federal regulations overseeing the national commodities futures market is obvious.
Our sister circuits' approaches to cases arising under the very similar Securities Exchange Act[28] support this conclusion.[29] Turbeville v. FINRA , 874 F.3d 1268 (11th Cir. 2017), is particularly instructive. There, the Financial Industry Regulatory Authority ("FINRA") had disciplined a registered representative of a FINRA-affiliated broker firm for conduct violating FINRA's rules.[30] Id. at 1272. He filed a suit in Florida state court claiming that FINRA's issuance of a "Wells notice" making a preliminary determination against him was defamatory and tortuously interfered with his businesses. Id. at 1272-73.[31] After removal to federal court, the district court dismissed the case, finding that FINRA is absolutely immune from damages claims arising from the exercise of its regulatory functions and that there was no private cause of action. Turbeville v. FINRA , No. 8:15-CV-2920-T-30EAJ, 2016 WL 501982, at *4-5 (M.D. Fla. Feb. 9, 2016). The Eleventh Circuit affirmed, determining the Securities Exchange Act preempted these tort claims. Noting the internal appeals and administrative-review process set forth in the Securities Exchange Act, the court explained that permitting the state claims to go forward "implies necessarily the existence of a private right of action against FINRA that operates parallel to the administrative-review processes the Act prescribes." Turbeville , 874 F.3d at 1276. Moreover, the statutory review process could correct the claimed injury by "removing information shown to be inaccurate" in the Wells notice. Id. at 1276-77. In the Eleventh Circuit's view, the remedies provided by the administrative-review scheme precluded a separate remedy under state law. Id. at 1277. It said that:
Recognizing the second set of rights and remedies under state law Turbeville seeks would undercut the distinctly federal nature of the Exchange Act. If actions like Turbeville's are permitted, fifty state courts would be authorized to supervise FINRA's regulatory conduct and its application of its internal, SEC-approved *896 rules through the vehicle of state tort law. And given SROs' front-line role in enforcing federal securities laws, such review would in turn lead to state-court supervision of the Exchange Act's securities-regulation regime writ large.
Id. The Commodity Exchange Act is a different statute, but given the similarity of the statutes, the logic of these Securities Exchange Act decisions applies here. Allowing suits against the NFA arising out of the NFA's disciplinary actions would present a serious obstacle to the NFA's ability to carry out its regulatory duties, especially where there are administrative remedies available.
Apparently recognizing the force of these cases, Effex limits its argument. It submits only that preemption should not apply to its claims because it is not a member of the NFA and because its claims arise out of NFA's "intentional ultra vires actions to damage Effex which it cloaked in FXCM Proceeding [sic]."[32] We do not believe that this distinction is a principled ground that justifies a different result. At bottom, Effex's challenge remains a challenge to the settlement of a disciplinary proceeding before the NFA that was within the NFA's jurisdiction. Effex claims, in essence, that the NFA improperly conducted its disciplinary proceedings. It does not matter whether Effex is a member or nonmember of the NFA or a party or nonparty to the proceedings. Permitting a collateral attack on those proceedings based on Effex's tort claims would impair the NFA's ability to enforce its rules and carry out its regulatory role.
Preemption does not necessarily mean that Effex has no remedy; it means that it must look to the federally mandated review scheme established by Congress. The fact that these remedies may be different from those afforded by state law, or inadequate by comparison, is not of consequence. Congress has the right to determine the remedies available and the individuals who are eligible for those remedies.[33]
At our invitation,[34] the CFTC filed an amicus brief outlining its view on whether a nonparty can seek review of an NFA disciplinary procedure or otherwise seek redress before the Commission. The Commission submits that although nonparties do not have a right to CFTC review of an NFA action that implicates them, the Commission does have the discretion to permit nonparties to obtain CFTC review in extraordinary circumstances pursuant to 17 C.F.R. § 171.14. The district court was of the view that nonparties also have the right to CFTC review through intervention or by asking the CFTC to review a matter sua sponte .
*897 We do not believe it appropriate for us to delineate in any definitive way the administrative paths that may be open to Effex. It is not at all clear that Effex will choose to pursue the administrative remedies that may be open to it. If, on reflection, Effex does pursue those remedies and then seeks review in this court, we will have an opportunity to address the question of remedies with the benefit of the Commission's views not in the abstract context of an amicus brief but after adversary litigation.
Conclusion
For the reasons set forth in this opinion, we affirm the judgment of the district court.
AFFIRMED

The district court had jurisdiction to adjudicate Effex's due process claims under 28 U.S.C. § 1331 and its state-law tort claims under 28 U.S.C. § 1332.

The court's dismissal was without prejudice to Effex's pursuing its administrative remedies and then seeking review of its properly exhausted claims.

Our jurisdiction is premised on 28 U.S.C. § 1291. In most cases, dismissal without prejudice "does not qualify as an appealable final judgment because the plaintiff is free to re-file the case." Larkin v. Galloway , 266 F.3d 718, 721 (7th Cir. 2001). This rule, however, is not without exception. A dismissal without prejudice is deemed final for the purposes of § 1291 where no amendment to the complaint "could resolve the problem." Kaba v. Stepp , 458 F.3d 678, 680 (7th Cir. 2006). Put differently, we treat a district court's dismissal as final where "there are multiple indicia that the district court was finished with the case." Hernandez v. Dart , 814 F.3d 836, 841 (7th Cir. 2016). Here, the entirety of the district court's dismissal of Effex's case suggests that it was indeed finished with the case and that Effex could not refile after it seeks any administrative remedy that may be available to it. First, the district court said that review of Effex's "properly exhausted claims" could be taken in "the appropriate federal court," R.89 at 15 (emphasis added), which contemplates filing in the court of appeals pursuant to the review process Congress provided in 7 U.S.C. § 21(i)(4). Additionally, the docket entry accompanying the district court's opinion indicates that "[t]his case will be closed," R.88, and the district court entered judgment separately pursuant to Federal Rule of Civil Procedure 58. R.90. Taken together, it appears that Effex could not refile suit with the district court even after seeking its administrative remedies. Cf . Kowalski v. Boliker , 893 F.3d 987, 994 (7th Cir. 2018) (determining there was appellate jurisdiction where the district court dismissed the complaint on grounds that made it "difficult to imagine" that the plaintiff could file a new suit in the future); Hernandez , 814 F.3d at 841 (noting one indicia that the district court finished with the case was a docket entry stating "Civil case terminated"); Gregory v. Hartman , No. 88-3169, 1990 WL 112017, at *1 (7th Cir. 1990) (unpublished) (finding jurisdiction where the district court "stated that [its] dismissal was 'not meant to reflect in any way on any legitimate state law claims' that Gregory may have had" and where "the court entered a separate judgment pursuant to [Rule] 58").

We "may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court." Slaney v. The Int'l Amateur Athletic Fed'n , 244 F.3d 580, 597 (7th Cir. 2001).

See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics , 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The Commodity Exchange Act was enacted in 1936 to amend the Grain Futures Act of 1922. Its original goal was to "prevent and remove obstructions and burdens upon interstate commerce in grains and other commodities by regulating transactions therein on commodity futures exchanges, to limit or abolish short selling, [and] to curb manipulation." Commodity Exchange Act, Pub. L. No. 74-675, 49 Stat. 1491, 1491 (1936). The Commodity Exchange Act has been amended many times since, most significantly with the Commodity Futures Trading Commission Act of 1974, § 1(a)(5), Pub. L. No. 93-463, 88 Stat. 1389 (1974) (establishing the independent Commodity Futures Trading Commission), the Commodity Futures Modernization Act of 2000, Pub. L. No. 106-554, 114 Stat. 2763 (2000) (among other things, renewing the Commission's mandate, clarifying regulation of over-the-counter derivatives, and repealing a ban on trading single stock futures), and the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (in part, expanding the Commission's authority to oversee the swaps marketplace).

Congress created the Commodity Futures Trading Commission as an independent commission to address concerns that the self-regulatory framework of the Commodity Exchange Act as previously enacted no longer met the changing needs of the commodity futures markets without some oversight. See, e.g. , H.R. Rep. No. 93-975, at 34-38 (1974); S. Rep. No. 93-1131, at 18-19 (1974).

See Commodity Futures Trading Commission Act of 1974, § 301, 88 Stat. at 1406-11 (1974) (codified at 7 U.S.C. § 21 ). The House version of the Commodity Futures Trading Commission Act included the relevant section authorizing SROs and delineating their roles and responsibilities whereas the Senate bill included an amendment striking such authorization and instead providing for further study of the appropriateness of SROs. See H.R. Rep. 93-1383, at 39 (1974) (Conf. Rep.). The Conference adopted the House provision with an amendment providing for annual reports to Congress so that Congress could continually review the effectiveness of SROs. Id. The House Committee on Agriculture indicated that permitting self-regulation through registered futures associations, under the supervision of a federal agency, struck an appropriate balance between self-regulation and direct federal regulation of futures trading. See H.R. Rep. 93-975, at 48 ("The Committee bill does not propose that self-regulatory activities of the exchanges be abolished in favor of continued and direct federal regulation of all aspects of futures trading. ... Yet, with proper Federal supervisory authority, needed self-regulatory efforts of the exchanges can live a useful life into the 21st Century and, hopefully, beyond."); id. at 58 ("Association activity would serve solely as a complement rather than a displacement to the authority of the new Commission.").

An associated person is a person who solicits orders, customers, or customer funds on behalf of the NFA member. See 7 U.S.C. §§ 6k, 21(b)(2).

Any application for CFTC review "shall be filed within 30 days after the date such notice is filed with the Commission and received by the aggrieved person, or within such longer period as the Commission may determine." 7 U.S.C. § 21(h)(2). Although application for CFTC review does not automatically stay a final disciplinary action, the Commission may order a stay "summarily or after notice and opportunity for hearing on the question of a stay," id. § 21(h)(3)(A), and "[t]he Commission shall establish procedures for expedited consideration and determination of the question of a stay," id. § 21(h)(3)(B). See generally 17 C.F.R. § 171.22(b) (regulations pertaining to stays).

See In re the Application of the Nat'l Futures Ass'n , 1981 WL 762560, at *37 (CFTC Sept. 22, 1981) (approving the NFA as an SRO under 7 U.S.C. § 21 ).

R.45 ¶¶ 21, 24. See also 17 C.F.R. § 5.22 (delineating persons working within the foreign exchange market who must register with a futures association).

The district court refers to these documents as the "NFA Publications." See R.89 at 2.

See In re Forex Capital Mkts., LLC , CFTC No. 17-09, 2017 WL 564341 (Feb. 6, 2017).

Id. at *3.

R.45 at 29-30.

Id.

At the same time that the NFA moved to dismiss the action, Effex brought a motion for a preliminary injunction.

In Paribas Futures, Inc. v. New York Mercantile Exchange , CFTC No. 90-E-3, 1990 WL 282868, at *2 (Mar. 22, 1990), the Commission noted that "[i]ntervention after an initial decision for the purposes of taking an appeal is appropriate in some circumstances."

In In re Petition of Lake Shore Alternative Financial Asset Ltd. , CFTC No. CRAA-07-03, 2007 WL 2751884, at *2 (Sept. 17, 2007), the Commission considered whether it should waive its rules pursuant to 17 C.F.R. § 171.14 to permit the appeal of a membership responsibility action by a nonparty to that action.

R.89 at 12.

The parties correctly agree that our review is de novo. Although the district court's opinion evinced some unease as to whether dismissal should have been based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or for want of jurisdiction under Rule 12(b)(1), resolving that issue does not affect our standard of review or disposition.

As Ziglar v. Abbasi , --- U.S. ----, 137 S. Ct. 1843, 1857, 198 L.Ed.2d 290 (2017), recounts, the Supreme Court declined to create an implied damages remedy in the following situations: an Eighth Amendment suit against prison guards at a private prison, Minneci v. Pollard , 565 U.S. 118, 120, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012) ; a due process suit against officials from the Bureau of Land Management, Wilkie v. Robbins , 551 U.S. 537, 547-48, 562, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) ; an Eighth Amendment suit against a private prison operator, Corr. Servs. Corp. v. Malesko , 534 U.S. 61, 63, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) ; a procedural due process suit against a federal agency for wrongful termination, FDIC v. Meyer , 510 U.S. 471, 473-74, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ; a procedural due process suit against Social Security officials, Schweiker v. Chilicky , 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) ; a substantive due process suit against military officers, United States v. Stanley , 483 U.S. 669, 683-84, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) ; a First Amendment suit against a federal employer, Bush v. Lucas , 462 U.S. 367, 390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) ; and a race-discrimination suit against military officers, Chappell v. Wallace , 462 U.S. 296, 297, 304-05, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

In light of the Supreme Court's explanation of the Bivens remedy in Ziglar , Effex distanced itself from its federal claims at oral argument and, indeed, seemed to abandon them. See Oral Argument at 14:40-15:03 ("At this point, I've got four other state claims and I'm not pursuing the constitutional claim-I've put that in the briefs-so I don't think the modification of the rules will do anything for us. And as Ziglar v. Abbasi has recently come down with, I don't think the constitutional claim would get us monetary relief, which is what we are seeking.").

See also NCR Corp. v. George A. Whiting Paper Co. , 768 F.3d 682, 711-12 (7th Cir. 2014).

In Freightliner Corp. v. Myrick , 514 U.S. 280, 287-89, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), the Supreme Court clarified its decision in Cipollone v. Liggett Group, Inc. , 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), to reject the proposition that implied preemption analysis is only appropriate when the statute is devoid of express preemptive language, abrogating our statement to that effect in American Agriculture , 977 F.2d at 1154. The Court's decision in Freightliner does not diminish the application of American Agriculture in this case.

The Commission has the authority to designate organizations as "contract markets" in which investors may trade commodity futures. See 7 U.S.C. § 7. Contract markets have some duties of self-regulation, including enacting and enforcing rules to ensure fair and orderly trading. See id. § 7(d).

See In re Application of the Nat'l Futures Ass'n , 1981 WL 762560, at *14 ("The provisions of [7 U.S.C. § 21 ] were modeled closely after Section 15A of the Securities Exchange Act.... Indeed, Congress adopted some of the language of Section 15A of the Exchange Act verbatim when it drafted [7 U.S.C. § 21 ]."). Compare 15 U.S.C. § 78s(d)(2) (permitting Securities Exchange Commission review of SRO disciplinary actions for "any person aggrieved"), with 7 U.S.C. § 21(h)(2) (permitting CFTC review of SRO disciplinary actions for "any person aggrieved").

See In re Series 7 Broker Qualification Exam Scoring Litig ., 548 F.3d 110, 114 (D.C. Cir. 2008) (determining preemption applies under the Securities Exchange Act where "Congress created a self-contained process to review and remedy [ ] complaints"); Barbara v. NYSE , 99 F.3d 49, 59 (2d Cir. 1996) ("Furthermore, allowing suits against the Exchange arising out of the Exchange's disciplinary functions would clearly stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress...." (internal quotation marks omitted)), abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning , --- U.S. ----, 136 S. Ct. 1562, 194 L.Ed.2d 671 (2016).

FINRA is an SRO operating under the oversight of the Securities Exchange Commission.

At the time he filed suit, the broker was no longer working in the securities industry and no longer a member of a FINRA-affiliated firm. Turbeville , 874 F.3d at 1273.

Appellant's Reply Br. 28.

Federal law does not need to provide a full portfolio of remedies when it preempts state law. See In re Series 7 Broker Qualification Exam Scoring Litig ., 548 F.3d at 114 (noting that, although "[p]laintiffs may be troubled by the fact that Congress's approach does not include damage-remedies," "[b]y specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief based on state common law" because such a suit "is merely an 'attempt ... to bypass the Exchange Act' and the process Congress envisioned therein" (quoting MM&S Fin., Inc. v. NASD , 364 F.3d 908, 912 (8th Cir. 2004) )).

We invited the Commission to submit an amicus brief addressing whether a nonparty affected by an NFA disciplinary action could seek the CFTC's review of that action. We thank the Commission for accepting our invitation. The parties were given an opportunity to respond to the Commission's submission and have submitted briefs stating their position.