[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13605

Non-Argument Calendar

_____

HESLIN GALLAGHER,

Plaintiff-Appellant,

*versus*

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-81394-AMC

_____

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Heslin Gallagher was offered a dream job as an investment counselor. But first she needed to pass certain qualifications examinations, including the "Series 7 exam." The Series 7 exam is administered by the Financial Industry Regulatory Authority, Inc. ("FINRA"), and is one of the requirements for becoming a securities broker. Gallagher took and failed the Series 7 exam three times. As a result, she lost her job.

Frustrated and heartbroken by the results, Gallagher "set out to do a little research" and came to believe that FINRA was engaging in an "exam-churning scheme" by using deceptive algorithms in its exam software to unfairly rig the Series 7 exam. FINRA's goal, according to Gallagher, was not to ensure a minimum level of qualifications for the securities industry, but instead to ensure a minimum level of revenue for FINRA by increasing the number of candidates who will have to retake (and therefore pay to retake) the exams. She sued FINRA *pro se* in federal court in August 2021, asserting that the alleged exam-churning scheme violated § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5.

FINRA moved to dismiss, and the district court granted FINRA's motion. The court found that FINRA was absolutely immune from suit for the performance of its delegated regulatory

duty to administer the Series 7 exam.  The court also concluded that the Exchange Act did not provide for a private cause of action against FINRA for violating its own rules.  Finding that any amendment of the complaint would be futile, the court dismissed the action with prejudice.  Gallagher now appeals.

## I.

We review *de novo* an order granting a motion to dismiss on the basis of immunity, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1295 (11th Cir. 2007) (*en banc*).  To survive a motion to dismiss, the complaint generally must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quotation marks omitted).  That means the complaint's non-conclusory factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted).  A claim has facial plausibility only when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.

The Exchange Act delegates substantial regulatory authority over the markets to private, "self-regulatory organizations" ("SROs"). *Weissman*, 500 F.3d at 196. And it requires any person who wishes to conduct securities-related business to be associated with a registered securities association and to comply with that association's rules. 15 U.S.C. § 78*o*(a)(1), (b)(1); *Turbeville v. Fin. Indus. Regulatory Auth.*, 874 F.3d 1268, 1270 (11th Cir. 2017). As the nation's only registered national securities association since 1939[1], FINRA, a private, not-for-profit corporation and SRO, "oversees and regulates securities firms who join its membership, individuals who work for those firms, and individuals associated with those firms." *Turbeville*, 874 F.3d at 1270–71 & n.2.

SROs like FINRA "have dual status as both quasi-regulators and private businesses." *Weissman*, 500 F.3d at 1296. "Because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions." *Id.* In other words, "entities that enjoy absolute immunity when performing governmental functions cannot claim that immunity when they perform non-governmental functions." *Id.* "Only when an SRO is acting under the aegis of the Exchange Act's

---

[1] FINRA was previously known as the National Association of Securities Dealers or NASD. *Turbeville*, 874 F.3d at 1270 n.2.

delegated authority does it enjoy [the] privilege" of immunity. *Id.* at 1297 (quotation marks omitted).

To determine whether an SRO's conduct is quasi-governmental, and thus whether absolute immunity applies, "we look to the objective nature and function of the activity for which the SRO seeks to claim immunity." *Id.* The test does not turn on "an SRO's subjective intent or motivation," but rather the "function being performed." *Id.*

We begin our analysis by "examin[ing] the nature and function of [FINRA's] actions as alleged" in the complaint. *Weissman*, 500 F.3d at 1298. Gallagher's allegations against FINRA relate to the design, administration, and scoring of the Series 7 exam. According to the complaint, FINRA's exam software uses algorithms—essentially a complex set of instructions and calculations for a computer—to "detect the areas in which a candidate is strong and the areas in which a candidate is weak" and adjust the remaining questions mid-exam, and it includes 10 unidentified "pretest" questions in the 135-question test, which purportedly do not contribute to a candidate's score.[2] The complaint also alleges that FINRA views its exams as having "tremendous economic value" to its "business" and that it seeks to protect the confidentiality of its exams. The complaint then asserts that FINRA uses algorithms

---

[2] The complaint's allegations also covered the rules surrounding the test-taking environment, such as the refusal to credit time for bathroom breaks, but Gallagher does not raise those allegations in her briefing on appeal.

6                    Opinion of the Court                    21-13605

and unscored questions purely for the purpose of financial enrichment, by increasing the number of exam failures and generating more business for itself.  In Gallagher's view, these aspects of the Series 7 exam are not for legitimate regulatory purposes and so are not shielded by immunity.

We conclude that the district court correctly granted FINRA absolute immunity from Gallagher's claim.  The nature and function of FINRA's alleged wrongful conduct in this case is firmly under the aegis of its delegated authority under the Exchange Act.[3] *See Weissman*, 500 F.3d at 1297.

The regulatory duties delegated to SROs like FINRA include developing and administering qualifications examinations.  Congress mandated that any person trading in securities meet "standards of training, experience, competence, and such other qualification as the [U.S. Securities and Exchange Commission ("SEC")] finds necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78*o*(b)(7).  To that end, the SEC is authorized to administer qualifications tests covering "questions

_____

[3] We note that Gallagher does not dispute the district court's secondary ruling—that there is no private cause of action against FINRA for violating its own rules—and says it's irrelevant because she did not raise such a claim.  *See Turbeville*, 874 F.3d at 1276 ("Congress did not intend to create a private right of action for plaintiffs seeking to sue SROs for violations of their own internal rules.").  Insofar as she attempts to raise a new claim against FINRA for the first time on appeal, it would also be barred by absolute immunity for the same reasons we discuss in this opinion.

21-13605              Opinion of the Court              7

related to bookkeeping, accounting, internal control over cash and securities, supervision of employees, maintenance of records, and other appropriate matter." *Id.* § 78*o*(b)(7)(B). That examination authority has been broadly delegated to SROs, which must ensure their members are "registered or approved in accordance with the standards of training, experience, competence, and other qualification standards . . . established by the rules" of the SRO. 17 C.F.R. § 240.15b7-1. "The delegation involves close oversight," since "the SEC approves all rule changes by an SRO" and "may also amend an SRO's rules itself." *In re Series 7 Broker Qualification Exam Scoring Litigation*, 548 F.3d 110, 112 (D.C. Cir. 2008).

In short, FINRA develops, administers, and scores the Series 7 exam under its delegated authority. *See In re Series 7*, 548 F.3d at 112; 17 C.F.R. § 240.15b7–1. Its obligations in that regard "arise only because of regulations under the Exchange Act." *In re Series 7*, 548 F.3d at 115. And those functions would "otherwise be performed by a government agency," namely, the SEC. *Weissman*, 500 F.3d at 1297; *see* 15 U.S.C. § 78o(b)(7)(B). Thus, FINRA's design and administration of the Series 7 exam, including its use of unscored questions and algorithms, arise out of, and directly relate to, its performance of a regulatory duty, for which it enjoys quasi-governmental immunity. *Weissman*, 500 F.3d at 1296–97.

That FINRA also operates as a business and earns money from the Series 7 exam, which it treats as confidential, proprietary information, does not change the nature and function of the activity being performed. *See id.* Gallagher attributes either profit-

seeking or more "nefarious" motivations to FINRA's use of algorithms and unscored questions in its exam software. But the test for immunity does not turn on FINRA's "subjective intent or motivation." *Id.* at 1297.

And in any event, Gallagher's complaint fails to plausibly establish that FINRA's use of algorithms and unscored questions for the Series 7 exam has no legitimate regulatory purpose. Gallagher infers from her experience and research that "the algorithms served no regulatory purpose whatsoever." We assume without deciding immunity would not apply if that were true. But her factual allegations fail to give rise to more than a "sheer possibility" that FINRA's use of algorithms is entirely divorced from its legitimate regulatory duties, which is not enough to state a plausible claim. *See Iqbal*, 556 U.S. at 678. At best, Gallagher's allegations suggest that FINRA *could* employ algorithms for purely profit-seeking purposes or with the intent to "generate[] a particular 'class' of deliberately failed persons." But she offers no reason to believe that FINRA has actually used algorithms in this way. In fact, she admits that the "function of the algorithms" is hidden and "the extent of the harm is unknown." Accordingly, Gallagher's allegations do not plausibly connect FINRA's use of algorithms and unscored questions in the Series 7 exam to a nefarious or non-regulatory purpose.

Of course, we recognize that this lawsuit stems in part from FINRA's secrecy about its exams, including how they are developed and scored. But there are good reasons why secrecy would be advisable to some degree, including to ensure the integrity of

21-13605                Opinion of the Court                9

the exam as a fair measure of a candidate's qualifications. FINRA could reasonably view greater public disclosure about the test or less restrictive testing environments as increasing the chances of cheating. FINRA's lack of transparency about its algorithms and other aspects of the test alone do not make it reasonable to infer that its purposes are non-regulatory.

Finally, we must make clear that, contrary to Gallagher's suggestions, our decision to affirm the dismissal of Gallagher's complaint is no slight on her intelligence or character. On the contrary, Gallagher has represented herself quite ably in unfamiliar terrain, making relevant and well-presented arguments. And while her difficult experience is no doubt frustrating for her, we cannot say that her complaint states a plausible claim that could pierce FINRA's quasi-governmental immunity for the performance of its delegated regulatory duties, or that she could state such a claim if granted leave to amend.

For these reasons, we affirm the dismissal of Gallagher's complaint as barred by FINRA's quasi-governmental immunity.

**AFFIRMED.**